PEOPLE v HENTKOWSKI

Docket No. 84210. Submitted April 10, 1986, at Grand Rapids. Decided August 19, 1986.

Defendant, Ronald J. Hentkowski, was convicted of two counts of delivery of marijuana, one count of possession of marijuana with intent to deliver and one count of possession of cocaine, Presque Isle Circuit Court, Joseph P. Swallow, J. Defendant's delivery convictions arose out of two controlled buys initiated by an agent working for the police department. The possession convictions arose out of evidence discovered during a search of defendant's home. Prior to trial, defendant moved to quash the information, arguing that he had been entrapped. He also moved to suppress the physical evidence which was seized from his home based on the fact that the magistrate failed to sign the search warrant. The court denied defendant's motions. Defendant appealed.

The Court of Appeals *held:*

1. The trial court's findings of fact in regard to the issue of entrapment are reviewed under the clearly erroneous standard. The evidence presented on the issue of entrapment was equivocal. The trial court's finding that defendant was not entrapped is not clearly erroneous.

2. A search and seizure made pursuant to a warrant which was inadvertently unsigned under circumstances requiring a warrant is unconstitutional.

Affirmed as to the delivery convictions and reversed as to the possession convictions.

1. CRIMINAL LAW — ENTRAPMENT.

The objective test of entrapment requires a trial court to dismiss charges against a defendant when agents of the government

REFERENCES

Am Jur 2d, Criminal Law §§ 202-209.

Am Jur 2d, Searches and Seizures §§ 60 *et seq.*

Severance of partially valid search warrant and limitation of suppression to items seized under invalid portions of warrant. 30 ALR4th 378.

See also the annotations in the Index to Annotations under Entrapment; Search and Seizure; Warrants.

engage in activity which goes beyond the mere offering of an opportunity to commit a criminal offense; the agents' conduct must be of the kind that could induce or instigate the commission of a crime by one not ready and willing to commit it regardless of the character or propensities of the particular person induced.

2. CRIMINAL LAW — ENTRAPMENT — BURDEN OF PROOF.

A defendant who relies on the defense of entrapment must prove entrapment by a preponderance of the evidence.

3. CRIMINAL LAW — ENTRAPMENT — APPEAL.

The trial court's findings of fact in regard to the issue of entrapment are reviewed under the clearly erroneous standard.

4. SEARCHES AND SEIZURES — WARRANTS — UNSIGNED WARRANTS.

A search and seizure made pursuant to a warrant which was inadvertently unsigned under circumstances requiring a warrant is unconstitutional.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Donald J. McLennan*, Prosecuting Attorney, and *J. Ronald Kaplansky*, Assistant Attorney General, for the people.

State Appellate Defender (by *Derrick A. Carter*), for defendant on appeal.

Before: R. M. MAHER, P.J., and T. M. BURNS and R. H. BELL,* JJ.

PER CURIAM. After a bench trial, defendant was convicted of possession with intent to deliver a controlled substance (marijuana), MCL 333.7401, subds (1) and (2)(c); MSA 14.15(7401), subds (1) and (2)(c), possession of less than fifty grams of a mixture containing a controlled substance (cocaine), MCL 333.7403, subds (1) and (2)(a)(iv); MSA 14.15(7401), subds (1) and (2)(a)(iv), and two counts of delivery of a controlled substance (marijuana), MCL 333.7401, subds (1) and (2)(c); MSA

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

14.15(7401), subds (1) and (2)(c). Defendant received concurrent sentences of five years probation on each offense. The first year was to be served in county jail. Costs and fines were also imposed and defendant was given one day's credit for time served. Defendant now appeals as of right. We affirm the delivery convictions, but reverse the possession convictions.

Defendant's delivery convictions arose out of two controlled buys initiated by an agent working for the police department. The possession convictions arose out of evidence discovered during a search of defendant's home.

Prior to trial, defendant moved to quash the information, arguing that he had been entrapped. He also moved to suppress the physical evidence which was seized from his home based on deficiencies in the search warrant, on deficiencies in the affidavit in support of the search warrant, and on the issuing magistrate's lack of neutrality. The trial court denied defendant's motions. Defendant now claims that the trial court erred in denying each of his motions.

### ENTRAPMENT

Michigan employs an objective test for determining whether entrapment has occurred. *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973). The objective test requires a trial court to dismiss charges against a defendant when agents of the government engage in activity which goes beyond the mere offering of an opportunity to commit a criminal offense. The agents' conduct must be of the kind that could induce or instigate the commission of a crime by one not ready and willing to commit it regardless of the character or propensities of the particular person induced. *Turner, su-*

*pra; People v D'Angelo,* 401 Mich 167, 173-174; 257 NW2d 655 (1977).

A defendant has the burden of proving, by a preponderance of the evidence, that he was entrapped. *People v D'Angelo, supra,* p 183. The trial court's findings of fact in regard to the entrapment issue are reviewed under the clearly erroneous standard. *Id.* See also MCR 2.613(C).

Defendant accuses the police of exploiting his friendship with the agent who made the drug purchases. Defendant also contends that the police placed undue pressure on him. A review of the record indicates that this case is distinguishable from those cases in which friendships are exploited or in which undue pressure is placed on a defendant.

While defendant testified that the police agent was a friend of his, the agent's testimony indicated that the two were not friends and that the agent did not know defendant personally. Rather, his main contact with defendant was in regard to the purchase of drugs. The trial court made explicit findings of fact in this regard. The court found that defendant was not a friend of the agent. This finding is not clearly erroneous. Thus, under the circumstances of this case, the police did not unduly exploit an existing friendship.

Defendant also contends that the police placed undue pressure on him which forced him into committing the crime. Defendant testified that the police agent indicated that he needed the drugs in order to sell them so that he could come up with money to pay attorney fees in a pending case. Defendant argues that, because the agent requested the drugs for this reason and because the agent was persistent in his request, undue pressure was placed on defendant. We disagree. In a situation where the seller and the purchaser are

merely acquaintances, the purchaser's statement of such a reason for needing drugs is not sufficient to establish entrapment. This is not the type of conduct which would induce the commission of a crime by one not ready and willing to commit it. This is especially true in this case since defendant was aware that the agent was also employed.

The trial court's findings on the entrapment issue are not clearly erroneous. Defendant did not carry his burden in establishing entrapment.

## THE SEARCH WARRANT

Defendant's two possession convictions were based on evidence which was seized after a search warrant was purportedly issued authorizing the items to be seized. Defendant contends that the trial court erred in denying defendant's motion to suppress the evidence because the search warrant had not been signed by the magistrate. We agree.

On February 25, 1984, an affidavit in support of a warrant was sworn to and presented to the magistrate. The magistrate, however, inadvertently failed to sign the warrant. Rather, he signed only the affidavit, acknowledging that the affidavit was subscribed and sworn to before the magistrate on February 25, 1984. Despite the fact that the warrant was not signed, police officers executed the warrant that same day. On February 28, 1984, after discovering that the warrant had not been signed, the magistrate signed the warrant. However, as noted, the search had already taken place.

For the purposes of our analysis, we will assume that the police had probable cause to search the premises. However, the existence of probable cause does not in and of itself make a search constitutionally proper. Both the Fourth Amendment to the United States Constitution and the correspond-

ing provision of the Michigan Constitution, Const 1963, art 1, § 11, contain a warrant requirement. The warrant requirement protects individual privacy from unrestrained exercise of governmental power. *People v Tyler,* 399 Mich 564, 584; 250 NW2d 467 (1977), aff'd in part, rev'd in part sub nom *Michigan v Tyler,* 436 US 499; 98 S Ct 1942; 56 L Ed 2d 486 (1977). The warrant requirement is not to be taken lightly. A search or seizure which is undertaken without a warrant or pursuant to an invalid search warrant is unreasonable per se under the Fourth Amendment to the United States Constitution and violates art 1, § 11 of the Michigan Constitution unless shown to fall within one of the various exceptions to the warrant requirement. See *People v Tyler, supra, People v Oliver,* 417 Mich 366; 338 NW2d 167 (1983); *People v Nash,* 418 Mich 196; 341 NW2d 439 (1983).

In this case, there is no asserted exception to the warrant requirement. The question for this Court is whether, in a situation where a search warrant is required, a search and seizure which takes place pursuant to an unsigned document is constitutional. We hold that it is not.[1]

Article 1, § 11 of the Michigan Constitution states in relevant part:

The person, houses, papers and possessions of

---

[1] Our decision is based on the Michigan Constitution.

Because the search and seizure was not constitutionally proper, the evidence must be suppressed. See *People v Tyler, supra; People v Oliver, supra.* See also *People v Sherbine,* 421 Mich 502; 364 NW2d 658 (1984).

We acknowledge that the United States Supreme Court has applied a "good faith" exception to the exclusionary rule of the Fourth Amendment to the U.S. Constitution. *United States v Leon,* 468 US 897; 104 S Ct 3430; 82 L Ed 2d 677 (1984). However, Michigan courts have refused to adopt a similar exception in connection with the exclusionary rule of the Michigan Constitution. *People v Sundling,* 153 Mich App 277; 395 NW2d 308 (1986); *People v Sellars,* 153 Mich App 22; 394 NW2d 133 (1986).

every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation.

Several considerations lead us to believe that an unsigned document cannot validate a search and seizure when there is no exception to the warrant requirement. First, the placement of a signature on a document would distinguish an actual "warrant" from other proposed documents drafted by law enforcement agencies which never actually become enforceable warrants. Second, in order for the police to obtain a warrant, the constitution requires that one must "issue." See also MCL 780.651; MSA 28.1259(1). We believe that a magistrate "issues" a "warrant" only when he signs an appropriate document and turns it over to the proper person. We agree with the reasoning set forth in *Connecticut v Surowiecki,* 184 Conn 95; 440 A2d 798 (1981), regarding similar language contained in a Connecticut statute. There, the Connecticut court stated:

The only issue on appeal is: Does the lack of a signature of a judge on a search warrant invalidate it even though the same judge found probable cause, but failed to sign the search warrant because of an oversight?

. . . Although there is no doubt that the judge in this case intended to sign the search warrant, we conclude that he did not issue the search warrant until he performed this act. The signing of the search warrant was to be the identifiable objective manifestation of his subjective intent to issue that search warrant. It is only when the former act has been completed that we are able to say that a search warrant was "issued." In other words, a lawful signature on the search warrant

by the person authorized to issue it was essential
to its issuance. See *Perry v Johnson,* 37 Conn, 32,
35 (1870); *United States v Carignan,* 286 F Supp
284 (D Mass, 1967); *Kelley v State,* 55 Ala App
402; 316 So 2d 233 (1975); *Martin v State,* 344 So
2d 248 (Fla App, 1976); *Byrd v Commonwealth,*
261 SW2d 437 (Ky, 1953); *State v Flemming,* 240
Mo App 1208, 1213; 227 SW2d 106 (1950); *People v
Coburn,* 85 Misc 2d 673; 380 NYS2d 944 (1976);
*Commonwealth v Williams,* 237 Pa Super 324; 352
A2d 67 (1975); *State v Cochrane,* 84 SD 527; 173
NW2d 495 (1970); 4 Wharton, Criminal Law &
Procedure § 1551. [*Surowiecki, supra,* pp 97-98.]

We also believe that public policy supports our
conclusion that a signature is required. Such a
requirement serves a cautionary function. It im-
presses upon the magistrate the seriousness and
importance of his action in issuing a search war-
rant. The constitutional protection against unrea-
sonable searches and seizures is not to be taken
lightly. A magistrate should conscientiously deter-
mine both whether a warrant should issue and the
extent of the authorization to search. In light of
the fact that proposed warrants are often drafted
by prosecutors, the requirement that a magistrate
properly sign the proposed search warrant is ex-
tremely reasonable and perhaps even necessary.

In addition, public policy does not support the
encouragement of police misconduct which could
result if searches based on unsigned warrants were
declared valid. The potential for abuse is clear. On
the other hand, the police are not overly burdened
by a signature requirement. Those officers who
execute a search must limit their search to the
dictates of the warrant. Thus, they must necessar-
ily review the document before they search. We do
not believe that officers who execute a search can

reasonably rely on an unsigned document as an authorization for conducting a search. When an improperly issued document is discovered before a search, the police can taken corrective measures and thereafter conduct the search.

We also believe that the requirement of a signature provides needed protections and assurances to persons in control of property which is to be searched. When such persons are presented with a document which is alleged to be a search warrant, they must be able to review the document and determine whether or not they should allow the officers to search. The custodian should not have to guess as to whether a magistrate intended or did not intend to sign the document which is presented to the custodian.

We also note that the Supreme Court has indicated that a search warrant based on an unsigned affidavit is invalid. *People v Goff,* 401 Mich 412; 258 NW2d 57 (1977). It appears to us that a signature on the warrant itself is much more important than a signature on an affidavit in support of a warrant. Thus, an unsigned search warrant is necessarily invalid.

We conclude that the search and seizure were invalidly conducted. We also believe that the evidence should have been suppressed. The evidence seized during the search provided the basis for the two possession charges against defendant. Defendant's possession convictions are therefore reversed.

Due to our reversal on this ground, we need not address defendant's other allegations of error.

Defendant's delivery convictions are affirmed, but defendant's possession convictions are reversed.

Affirmed in part and reversed in part.